RODRIGUEZ V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-204-CR

JOSE VENTURA RODRIGUEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Jose Ventura Rodriguez of driving while intoxicated (“DWI”), and the trial court sentenced him to 120 days in jail, probated for twenty-four months, and assessed a $750 fine.  On appeal, Appellant raises one point, challenging the factual sufficiency of the evidence to support his conviction.  We will affirm.

II.  Factual Background

On November 6, 1999, at approximately 7:00 p.m., Appellant was involved in a traffic accident with Virginia Jones at the intersection of University Drive and Jacksboro Highway in Fort Worth, Texas.  During his trial, the State called Jones and Officer Greg Jones, who responded to the scene and arrested Appellant.  The State also played a portion of a videotape from the jail, which depicted the police reading Appellant his statutory DWI warning and Appellant’s refusal to submit a breath sample.  The defense called one expert witness, Leo Luebbehusen, who testified about the horizontal gaze nystagmus (“HGN”) test administered by Officer Jones. 

Jones testified that, as she attempted to cross the intersection at a green light, she was struck by a pickup truck.  After the accident, Jones observed that the pickup truck’s headlights were not lit, even though it was dark outside. The driver of the pickup, whom Jones identified as “short and dark-haired and Spanish,” approached Jones to make sure she was okay.  Jones testified that “his breath smelled real bad . . . with alcohol.”  A woman, who was walking down the street, also approached Jones to see if she could help, and Jones asked her to call an ambulance and the police.  During trial, Jones was unable to identify Appellant as the driver because she only saw him briefly at her window before an ambulance took her to the hospital.

Officer Greg Jones was dispatched to the scene of the accident at 7:01 p.m., and he arrived at 7:07 p.m.  At trial, Officer Jones identified Appellant as the driver he spoke with at the scene of the accident.  In speaking with Appellant, Officer Jones observed that Appellant’s eyes were watery and bloodshot.  Additionally, Officer Jones “smelled the odor of alcohol on [Appellant’s] breath and on his person.”  Appellant told Officer Jones that he had had “one beer.”  Because Officer Jones understood that ambulance personnel had already spoken with both drivers and because Appellant did not complain of any injuries, Officer Jones began to test Appellant to determine if he was intoxicated.  

Officer Jones administered the HGN test, the walk-and-turn test, and the one-leg stand test on Appellant.  Officer Jones testified that during the HGN test, both of Appellant’s “eyes did jerk and . . . did not pursue smoothly,” which indicated that a stimulus, like alcohol or drugs, was in his body.  Officer Jones then looked for nystagmus in the eye “when it’s moved as far as possible to the left to maximum deviation,” but he testified that Appellant did not exhibit any clues of possible intoxication during this part of the test in either his left or right eye. 

Officer Jones testified that he then tested Appellant for nystagmus in the eyes before forty-five degrees and that Appellant “show[ed] clues in both the left and right [eye] by jerking.”  Officer Jones did not test for vertical nystagmus.  He also did not check for equal pupil size or for equal tracking, but he did not notice anything abnormal about Appellant’s pupil size. 

After giving the HGN test, Officer Jones instructed and demonstrated to Appellant the walk-and-turn test.  When asked, Appellant told Officer Jones that he understood the officer’s instructions.  According to Officer Jones, Appellant exhibited six clues of possible intoxication while performing the test.  Appellant was unable to keep his balance while listening to the instructions, was unable to touch heel to toe as instructed, had to stop while walking to steady himself, lost his balance while walking and turning, used his arms for balance, and failed to turn in the manner he was instructed.  In fact, instead of turning around, Appellant walked the last nine steps of the test backwards. 

Next, Officer Jones gave Appellant instructions and a demonstration of the one-leg stand evaluation.  Officer Jones testified that Appellant exhibited four clues during the test:  he swayed by balancing, put his foot down, put his foot down more than three times, and used his arms to balance himself.  No nose touch test, counting, or recitation of the alphabet was required of Appellant because these are not standardized tests, according to Officer Jones. 

After all three tests were administered, Officer Jones determined that Appellant was under the influence of alcohol and arrested him for DWI.  Officer Jones testified that when Appellant was being arrested, Appellant said, “Just because I’m drunk doesn’t mean I was the cause of the accident.”  Also, Officer Jones saw two broken beer bottles and one that was neither broken nor open inside of Appellant’s vehicle.  Officer Jones testified that, based on everything he observed at the accident site, he concluded that Appellant was intoxicated, having lost the normal use of his mental and physical faculties.  Officer Jones testified that Appellant was taken to jail, where Appellant refused to give a sample of his breath to the police. 

Appellant’s sole witness was Leo Luebbehusen, a local criminal defense attorney, who testified as an expert witness on DWI HGN field sobriety testing. He testified about screening persons before administering the HGN test and checking for different sized pupils, and he opined that skipping some of the steps for the HGN evaluation compromises the test’s validity.  On cross-examination, Luebbehusen agreed that, despite his training on HGN tests, he had never made a DWI stop or a DWI arrest.  Luebbehusen also testified that he was not present at the accident scene and had not read the accident report.  Luebbehusen later agreed that if he was not present at a specific location, he would not be able to determine whether the test was done correctly.  Further, Luebbehusen testified that he could not testify about what was done in any specific case and that he did not know any of the facts in this case. 

III.  Standard of Review

In his sole point, Appellant complains that the evidence presented at trial is factually insufficient to sustain his conviction.  Factual sufficiency review begins with the assumption that the evidence is legally sufficient.  
See Santellan v. State
, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

IV.  Application of Law to the Facts

Appellant argues that despite Officer Jones’s testimony that Appellant was intoxicated, “a reasoned and impartial viewing of the tape [from the intoxilyzer room] dispels the theory that [Appellant] had lost the normal use of his faculties.”  He argues that the videotape “directly contradicts” Officer Jones’s testimony, which tended to show his guilt.  In support of his argument, Appellant points out that the tape does not demonstrate that his speech was slurred, that he had any trouble with walking or balancing, or that he smelled of alcohol.  As such, Appellant maintains that the State’s evidence is “fatally weak.”  
See Johnson
, 23 S.W.3d at 11.  We disagree.

The videotape is brief and shows Appellant walk into the intoxilyzer room at 8:18 p.m. and stand on a black X on the floor, while Officer Jones reads him his statutory warning.  Thus, the videotape was made over an hour and twenty minutes after Appellant ran into Jones’s car.  On the tape, Appellant orally and in writing refuses to submit a breath sample to the police.
(footnote: 2)  Officer Jones left the room after reading the warning to Appellant.  Officer Jones agreed on cross-examination that he never said that the videotape depicts Appellant swaying, staggering, or needing support.  On re-direct, however, Officer Jones testified that he did not see any standard field sobriety tests performed on Appellant in the video. 

We have carefully reviewed the entire record, which contains ample evidence that Appellant had lost the normal use of his mental and physical faculties.  Appellant was driving without his lights on at night and ran into another vehicle.  As the accident was being investigated, Appellant told Officer Jones that he had had “one beer” and stated that he was “drunk.”  Officer Jones found three beer bottles in Appellant’s vehicle.  In addition to performing poorly on the field sobriety tests administered by Officer Jones, Appellant refused to submit a breath sample.

Based on our review of the testimony and the videotape, giving due deference to the fact finder’s determinations, we cannot say that the proof of guilt in this case is so obviously weak as to undermine confidence in the jury’s determination that Appellant was intoxicated, or that proof of Appellant’s guilt is greatly outweighed by contrary proof.   
See id.
; 
see also Perkins v. State
, 19 S.W.3d 854, 858 (Tex. App.—Waco 2000, pet. ref’d) (holding evidence factually sufficient to support DWI conviction where DWI videotape and defense witness testimony contradicted the State’s witnesses).  Accordingly, we overrule Appellant’s sole point.

V.  Conclusion

Having overruled Appellant’s sole point, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  December 18, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Apparently, by agreement of the State and Appellant, only a portion of the videotape was shown to the jury; however, the record does not reflect exactly where the tape was stopped.  Because the State acknowledges this stipulation in its brief, we will assume that the tape was stopped before the officer in the intoxilyzer room attempted to perform further sobriety tests on Appellant, and we will not consider what occurs on the tape after Officer Jones leaves the room.